UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

N⁰ 12-cv-672 (JFB) (ARL)
_____

MARQUIS A. MARTIN,

Plaintiff,

VERSUS

PATRICK R. DONAHOE,

Defendant.
_____

**MEMORANDUM AND ORDER**
March 22, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Marquis A. Martin ("Martin" or "plaintiff") brings this action against Patrick R. Donahoe, Postmaster General of the United States Postal Service ("defendant"), pursuant to 29 U.S.C. §§ 701 *et seq.* (the "Rehabilitation Act"), alleging that he was discriminated against on the basis of his disability (depression) when he was terminated from his employment after repeatedly being absent from work.[1] Defendant now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendant's motion in its entirety.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the parties' affidavits, exhibits, and respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50-51 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

---

[1] Plaintiff originally brought this action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"). (Compl. ¶ 1.) However, the parties agreed at the pre-motion conference in this matter that plaintiff's claim would be construed under the Rehabilitation Act, and not the ADA.

[2] In addition, where the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record.

1. Plaintiff's Disability and Termination

Plaintiff was a Mail Handler for the United States Postal Service ("USPS") at a branch in Bethpage, New York. (Compl. ¶ 2; Def.'s 56.1 ¶ 1.) Plaintiff suffers from "severe and chronic depression" (Compl. ¶ 3), and plaintiff claims that due to his depression, he had difficulties performing his duties as a Mail Handler and that his "attendance was erratic and not continuous" (*id.* ¶ 7). Plaintiff's domestic partner states that, beginning in July 2010, plaintiff "began to exhibit signs of severe depression that required hospitalization for treatment." (Aff. of Starlette Chisem ("Chisem Aff.") ¶ 4.) On August 18, 2010, the USPS sent plaintiff a "Notice of Removal," which informed plaintiff that he would be removed as a USPS employee effective September 24, 2010.[3] (Decl. of Eriberto Cedeno, Ex. B, Notice of Removal, at 1.) The Notice of Removal stated that plaintiff was being terminated because he had been absent from work without permission for over six weeks, and that plaintiff had not provided any "acceptable documentation to justify [his] absence . . . ." (*Id.*) Plaintiff was also discharged for failing to follow instructions, because he had been directed on three occasions to return to work or provide documentation explaining his absence, but had failed to do so. (*Id.*) Through his union, plaintiff filed a grievance regarding his removal, and on June 15, 2011, an arbitrator upheld the USPS' actions. (Def.'s 56.1 ¶¶ 3-4.)

2. Exhaustion of Administrative Remedies

On July 29, 2011, 308 days after the effective date of his removal, plaintiff contacted the Equal Employment Opportunity Commission ("EEOC"). (Def.'s 56.1 ¶ 7.) On October 21, 2011, plaintiff filed a formal complaint with the agency. (Decl. of Kenneth Abell ("Abell Decl.") Ex. D, Dismissal of Formal EEO Complaint, at 1.) On November 14, 2011, the EEOC dismissed plaintiff's complaint as untimely because plaintiff did not contact the EEOC until 308 days after the effective date of his removal, while federal regulations require an aggrieved person to contact an EEO Counselor within 45 days of the discriminatory action. (*Id.* at 1-3); *see also* 29 C.F.R. § 1614.105(a)(1).

Plaintiff claims that he did not file a timely complaint with the EEOC because he was "suffering from a major depressive disorder . . . whereby he could not function with the clarity one would need to fully comprehend what he would need to do to file suit against his employer." (Pl.'s Opp'n at 6.) Plaintiff's domestic partner states that, during the relevant time period, plaintiff had difficulty performing routine tasks such as bathing and eating, and that he did not "function out of bed" more than two days a week. (Chisem Aff. ¶ 14.) She also claims that plaintiff began to experience delusions and paranoia that occurred approximately every three weeks. (*Id.*) However, plaintiff provides no medical records regarding his condition after the effective date of his termination on September 24, 2010. The

---

[3] Although plaintiff concedes that he did not timely file an EEOC complaint as required by federal regulations, plaintiff states that the effective date of his removal was June 15, 2011, the date that an arbitrator upheld his termination. (Pl.'s 56.1 ¶ 2.) However, as the Supreme Court has stated, the "pendency of a grievance, or some other method of collateral review of an employment decision does not toll the running of the limitations period." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (citing *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976) (rejecting argument that "the statutory period for filing a claim with the EEOC" should be tolled "during the pendency of grievance or arbitration procedures under the collecting-bargaining contract")). Therefore, the operative date of removal for exhaustion purposes is September 24, 2010.

only records that plaintiff did submit relate to the period between his Notice of Removal and the effective date of his termination. A counselor from the USPS Employee Assistance Program ("EAP") noted on August 24, 2010 that plaintiff reported "feeling better" and his "presentation was less depressed." (*Id.* Ex. 1, at 6.) Plaintiff's primary care physician remarked on September 2, 2010 that plaintiff reported a "lack of interest or pleasure in activities" and "sleeping [a lot]," but that plaintiff's affect presented as "normal," "not flat," and "not sad." (*Id.* at 24-25.)

Despite plaintiff's claim that he was unable to understand his legal rights following his termination, plaintiff filed a grievance relating to his termination and testified before an arbitrator on May 26, 2011. (Abell Decl. Ex. B, Arbitration Award, at 1-2.) At oral argument, plaintiff's attorney stated that this testimony was limited, and there was no indication during the testimony that plaintiff was well enough to understand his rights. However, no transcript or evidence was submitted to support this assertion. In addition, plaintiff reported to the EAP counselor on August 24, 2010 that he had begun the legal process of locating his children and gaining visitation rights. (Chisem Aff. Ex. 1, at 6.)

Following oral argument, the Court gave plaintiff 45 days to submit any medical documentation to explain why he was unable to make contact with an EEO Counselor following his termination. By letter dated November 13, 2012, plaintiff informed the Court that he did not have any supplemental submissions. (*See* Notice by Marquis A. Martin, Nov. 13, 2012, ECF No. 18.)

### B.  Procedural Background

Plaintiff filed the complaint in this action on February 10, 2012. Defendant filed a pre-answer motion for summary judgment on June 15, 2012. Plaintiff filed his opposition to the motion on July 21, 2012, and defendant replied on August 3, 2012. The Court held oral argument on September 18, 2012. The Court has fully considered the submissions of the parties.

### II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)

(quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is not warranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies in a timely manner, and there is no basis for equitable tolling. For the reasons set forth below, the Court agrees.

### A. Employment Discrimination Claims and Exhaustion of Administrative Remedies

#### 1. Legal Standard

"To establish a *prima facie* case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is an individual with a disability, (2) he was otherwise qualified for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds." *D'Amico v. City of N.Y.*, 132 F.3d 145, 150 (2d Cir. 1998) (citations and internal quotation marks omitted). However, in order to bring a Rehabilitation Act discrimination claim in a federal district court, a plaintiff must first exhaust his administrative remedies. *See Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) ("EEOC regulations require an employee suing the federal government under the Rehabilitation Act to exhaust certain administrative remedies before initiating a suit in the district court."). Thus, an aggrieved employee must first seek EEO counseling within 45 days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a)(1). Failure to seek EEO counseling is grounds for dismissal of plaintiff's action. *See Torres v. U.S. Dep't of Veteran Affairs*, 02-CIV-9601, 2004 WL 691237, at *4-5 (S.D.N.Y. Mar. 31, 2004) (dismissing case where federal employee did not consult with an EEO counselor within 45 days of the alleged discriminatory act); *Judge v. Henderson*, 172 F. Supp. 2d 410, 412-13 (S.D.N.Y. 2001) (same).

However, failure to exhaust is not jurisdictional. *Downey v. Runyon*, 160 F.3d 139, 145-46 (2d Cir. 1998) ("'[F]iling a

4

timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))). In particular, federal regulations require that the 45-day requirement be tolled:

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). Thus, this Court must consider whether there are any grounds for equitable tolling. *See Boos*, 201 F.3d at 184 (holding 45-day requirement subject to equitable tolling).

"Tolling of the time limit is granted when 'rare and exceptional circumstances' prevented a plaintiff from filing on time." *Williams v. Potter*, No. 06 Civ. 8258, 2007 WL 2375818, at *5 (S.D.N.Y. Aug. 14, 2007) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990) (noting that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect"). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling [] lies with the plaintiff." *Boos*, 201 F.3d at 184-85; *see also Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507, 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

Courts have held that only in a limited number of cases do extraordinary circumstances exist. Such cases include where the plaintiff has a mental or physical disability. *See, e.g.*, *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 281-83 (S.D.N.Y. 2001). In circumstances more extreme than those in the present case, courts have held that extraordinary circumstances did not exist. See *Ferrer v. Potter*, No. 03 Civ. 9113, 2005 WL 1022439, at *8 (S.D.N.Y. May 3, 2005) (holding father's death insufficient reason for equitable tolling); *Chalom v. Perkins*, No. 97 Civ. 9505, 1998 WL 851610, at *6 (S.D.N.Y. Dec. 9, 1998) ("Even if [plaintiff] did offer proof of the mental grief she alludes to, it would not reach the high standard that this circuit has applied." (citing cases)); *Pauling v. Sec'y of Dep't of Interior*, 960 F. Supp. 793, 804, n.6 (S.D.N.Y. 1997) (holding that plaintiff's claim that he was suffering from a "major depressive episode" did not excuse his failure to exhaust administrative remedies when the medical evidence "indicat[ed] only that he was too ill to work, not that he was too ill to comprehend his rights and to file a

complaint"); *Decrosta v. Runyon*, Nos. 90-CV-1269, 90-CV-585, 1993 WL 117583, at *3 (N.D.N.Y. Apr. 14, 1993) (holding that equitable tolling was not justified despite doctor's statement that the plaintiff was "suffering from a major depressive disorder that was more serious than a neurosis and his overall ability to function in society was severely limited" when other testimony from doctors demonstrated that plaintiff could care from himself, comprehend problems with his employment, and had retained an attorney regarding his legal remedies).

2. Application

As a threshold matter, plaintiff does not dispute that he failed to file a timely request for EEO counseling as required by federal regulations. Instead, plaintiff argues that he is entitled to equitable tolling because he was "suffering from a major depressive disorder . . . whereby he could not function with the clarity one would need to fully comprehend what he would need to do to file suit against his employer." (Pl.'s Opp'n at 6.) To corroborate plaintiff's condition in the period between his discharge from the USPS and his complaint to the EEOC, plaintiff only submits the unsupported affidavit of his domestic partner, which claims that plaintiff had difficulty performing simple life functions and often did not get up from bed. However, plaintiff has not submitted any medical evidence to substantiate his claims. Following oral argument, plaintiff was given another opportunity to submit medical evidence which could provide a justification for his 308-day delay in contacting the EEOC, but plaintiff was unable to do so. *See Boos*, 201 F.3d at 185 ("[Plaintiff's] conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling."); *Chalom*, 1998 WL 851610, at *6 (rejecting equitable tolling where plaintiff "offers no evidence of her suggested mental anguish and stress and the extent to which it affected her ability to file within the statutory deadlines.").

In fact, the evidence in the record demonstrates that plaintiff was able to function in society and comprehend his legal rights. Plaintiff told the EAP counselor after receiving his Notice of Removal that he had begun the legal process of locating his children and gaining visitation rights. (Chisem Aff. Ex. 1, at 6.) Most importantly, plaintiff filed a grievance regarding his termination and testified before an arbitrator on May 26, 2011. (Pl.'s 56.1 ¶¶ 3-4; Abell Decl. Ex. B, Arbitration Award, at 1-2.) Plaintiff's participation in this legal process regarding his employment demonstrates that he had the ability to initiate contact with the EEOC following his termination. *See Hedgepeth v. Runyon*, 96 CIV. 1161, 1997 WL 759438, at *5 (S.D.N.Y. Dec. 10, 1997) ("[T]he fact that Plaintiff sought disability retirement benefits in the intervening months between the date of discharge and the date of EEO notification belies any notion that Plaintiff was sufficiently incapacitated to warrant tolling."); *Pauling*, 960 F. Supp. at 804 n.6 (plaintiff denied equitable tolling when he pursued a claim for workers' compensation during the relevant time period but failed to initiate contact with the EEOC).

The precedent that plaintiff directs the Court to is unpersuasive. For example, in *Tsai*, the court denied the defendant's motion to dismiss because the plaintiff had alleged physical and mental conditions to justify her delay in initiating contact with the EEOC. 137 F. Supp. 2d at 282. The court found that plaintiff's ability to file for disability benefits did "not necessarily refute her inability to file an EEOC charge"

6

because filing for disability benefits was a "non-adversarial process" that did not involve discussion of her former employer, any mention of which "exacerbated" her depression. *Id.* at 282-83. First, in contrast to the plaintiff in *Tsai*, plaintiff here does not claim that any mention of his employer exacerbates his depression, and the grievance process he initiated surrounded the same universe of facts as any complaint that he would have filed with the EEOC. Furthermore, upon the defendant's motion for summary judgment, the court in *Tsai* dismissed the plaintiff's complaint, as the evidence produced during discovery demonstrated that plaintiff had "pursued various legal rights in a number of ways" during the relevant time period, including consulting with an attorney regarding a possible discrimination suit against her employer. *Tsai v. Rockefeller Univ.*, No. 00 CIV. 329, 2002 WL 237843, at *5 (S.D.N.Y. Feb 15, 2002).

Plaintiff's reliance on *Benn v. Greiner*, 275 F. Supp. 2d 371 (E.D.N.Y. 2003), is also unpersuasive. In *Benn*, a court determined that equitable tolling was warranted for a petitioner seeking a writ of *habeas corpus* when the petitioner was "prone to distracting auditory hallucinations," was "confined to the mental health ward of [the] prison for much of his sentence," and could not understand simple directions. *Id.* at 373-74. Even fully crediting the affidavit of plaintiff's domestic partner, plaintiff has clearly not satisfied his burden of demonstrating that his situation is sufficiently serious, such as the circumstances in *Benn*, to warrant this Court excusing his 308-day delay in initiating contact with an EEO Counselor.

Having considered all of the evidence, including the affidavit of plaintiff's domestic partner, plaintiff's ability to pursue a grievance procedure against the USPS (including testifying before an arbitrator), and plaintiff's failure to submit any medical evidence to substantiate his alleged inability to pursue his legal rights due to his depression (even after being given additional time by the Court to do so), the Court concludes that this is simply not one of the "rare and exceptional" circumstances that would justify equitable tolling. *McGinnis*, 208 F.3d at 17.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 22, 2013
       Central Islip, NY


\* \* \*


Plaintiff is represented by Locksley O. Wade, 110 Wall Street, 11th Floor, New York, New York, 10005. The attorney for defendant is Kenneth M. Abell, United States Attorney's Office Eastern District Of New York, 271 Cadman Plaza East, Brooklyn, New York, 11201.

7